Good afternoon, your honors. My name is Brendan Hickey. I represent petitioner Harjit Johal. Ms. Johal received ineffective assistance of counsel when her attorney incorrectly advised her that she would be deportable if convicted of the charge against her, a violation of 1623, rather than giving her the correct advice that she would only be deportable if she was convicted and received a sentence of at least one year in custody. As a result of that failure to give correct advice, Ms. Johal incorrectly believed that the only way she could avoid deportation and remain in the United States was to take her case to trial in the face of what this court previously described as overwhelming evidence of guilt. She did so. She was duly convicted, sentenced to two years in custody, and then subjected to an order of removal. If she had received the correct legal advice, there is at least a reasonable probability that Ms. Johal would have entered a guilty plea and would have received a sentence of less than a year, thus preventing an order of deportation. Thank you. What about the fact that the judge who rejected that argument on the 2255 was the same sentencing judge? Does that strongly suggest that even had she pled guilty and accepted responsibility, she still needed a variance? And it doesn't appear that Judge Burrell was particularly amenable to a variance? He was not amenable to a variance in the specific context of a post-trial request for a variance. And that's in his opinion. He's talking about trial counsel's failure to even explain in the sentencing memo that a sentence of a year or more would trigger deportation. If she had come before the court in a more favorable procedural posture, then the outcome is a reasonable probability it would have been substantially different. I understand that there are two possible scenarios if that happened. One is that she got a plea agreement with some agreement to the government to recommend a sentence of less than a year. And the other is that she didn't, but she pled, in which case the guideline sentence would have been less than it was after trial because there would have been an acceptance of responsibility. Correct. The guideline sentence, if she had pled guilty without an agreement, would have been 15 to 21 months. So she would only have needed a variance of three months and a day. And because the sentence she needed was 364 days, a sentence of less than a year also makes you ineligible for custody credits from BOP. So a 364 sentence results in the same amount of time as a 14-month sentence. So the amount of leniency she needed to avoid deportation was five weeks maybe. I mean, she was very close and she had very strong equities. She had no criminal history. She had three United States citizen children, two of whom were still minors living at home. She had her husband living with her in the United States. He was a long-haul truck driver, so the children were dependent on her care. And I think most of that, in addition to generally strong equities and being very close, you also have her co-defendant, Hamaira Chechi, who did plead guilty and who received a sentence of probation and home confinement. You know, the two defendants who went to trial got two years, and the one defendant who didn't go to trial, who tendered a guilty plea. She cooperated, but she wasn't asking for an as-favorable sentence. She didn't need an as-favorable sentence. She could have a much more onerous sentence and still not be deported. That's correct. She didn't need to get a sentence of probation and home confinement. She needed 364 days, and that would have accomplished her goals. And it's clear from the contemporaneous record, in addition to the declarations, that her goal all along was to not be deported. In the emails between her attorney and the trial prosecutors, which are in volume two of the Excerpts of Record, pages 81 and 82, her attorney makes repeated references to a felony conviction potentially rendering her deportable. And sort of that was the key issue he said, it would be devastating to her and her family to receive a conviction in this case. With the present administration, she would probably be deported. Now that statement not only shows that her lawyer didn't understand the immigration law, but it also shows that the focus in plea negotiations was on obtaining an outcome that would not result in deportation. And maybe the misjudgment. Is there any evidence that Mr. Roque followed up on the U.S. attorney's offer to send a plea offer? I'm not aware of any evidence. I have not had a chance to examine either the trial attorney for either side in this case. So I don't know what happened after that. But it is telling that they were willing to make an offer and that Mr. Roque sort of didn't bother to find out what that offer was. Mr. Roque, the only suggestion he made, which was unacceptable, would not have had her convicted for a felony because he really was convinced that if she were convicted for a felony, she had this immigration problem. And that's what he said. And that's how they came to an impasse at that point, because he didn't want her to have a conviction for any felony. Right. He understood the client's goal of avoiding deportation, but he did fundamentally misunderstood the law about how to accomplish that goal. Avoiding a felony conviction was entirely unnecessary. The client could be convicted of a felony and remain in the United States as long as she got 364 days in custody or fewer. And there's also not really an issue about the client being unwilling to take responsibility because in those same emails, Mr. Roque requests pretrial diversion pursuant to section 9.22 or 9-22 of the United States Attorney's Manual. And that section, which is cross-referenced by section 712 and 715 of the United States Attorney's Manual, requires defendants to accept responsibility for their conduct as a condition of receiving pretrial diversion. So, you know, the underlying, you know, the underlying indication is my client will accept responsibility. She just wants to avoid deportation. And only because Mr. Roque, you know, had a total misunderstanding of the relevant immigration law were the parties unable to reach a resolution. And more importantly, the client was not able to make a knowing and voluntary decision about whether to plead guilty or proceed to trial with a reasonable understanding of what the consequences would be. Now, the government... Go ahead. Is the proper remedy here, in your view, an evidentiary hearing to sort out the question of prejudice or not? Or do you believe on this record, they don't even need, we don't even need to order an evidentiary hearing? I think that the record is sufficient to vacate as it exists before the court, because not only was she close in terms of her guideline range and had strong equities, but you have the co-defendant who received no custody time at all. And the magistrate judge who was going to grant or recommended granting relief and then was withdrawn. Did she suggest an evidentiary hearing or a vacating? Yes, she ordered an evidentiary hearing. And then that order was revoked by the district court judge who denied an evidentiary hearing. You know, and as the district court judge correctly pointed out, she merely had to allege sufficient facts to be entitled to an evidentiary hearing. And, you know, just Ms. Johal's sworn declaration on its own alleges sufficient facts to entitle her to relief. So what facts do you think would be, have to be determinants or an evidentiary hearing? I think that, I think that she has made a sufficient showing to entitle her to relief because the standard is just a reasonable probability of a different outcome. The prejudice standard. There's only a reasonable probability of a different outcome. She doesn't have to prove beyond a reasonable doubt or even by a preponderance of evidence that with the correct legal advice, things would have played out differently. Wouldn't the credibility of her assertion about what she would have done, shouldn't that, isn't that a factual issue that ought to be heard? That is, the credibility of that is a factual issue, Your Honor. But there are, the email correspondence and the broader context of all of her decisions in this whatever she could do to avoid deportation and that that was her primary goal in this litigation and that she would have pled guilty if she had only understood that that was the best way for her to avoid deportation and separation from her family. Counsel, has your client been deported? You said there was an order of deportation against her. Has she been deported? No, she is physically present in the United States. There was an order of deportation issued against her. That was appealed by her immigration counsel. I believe her appeal has been denied by the BIA and maybe now before this court. She served about, she spent about a little over a year in immigration detention. And then at the beginning of the pandemic in May of 2020, she was released from immigration detention. And my understanding is that the immigration service is not physically removing people as a result of the ongoing, as a result of the ongoing pandemic. So if we were to reverse big hate on this record, he would have to move to reopen her proceedings before the BIA based on that, right? Yes, she would have to file a motion to reopen, Your Honor. Okay, thank you. I took you over your time. We should hear from Mr. Kenny. Good afternoon. May it please the court, Shea Kenny on behalf of the United States. I'd like to pick up with Judge Chen's question about the fact that the same sentencing judge reviewed these arguments and then subsequently denied the 2255 motion. This is correct. Petitioner made these same arguments before the same judge and in reviewing the record and in reviewing the allegations about her trial attorney's advice, the district court found that there was no evidence in the record to support a reasonable probability either that the government would have made a plea offer that would have resulted in the needed sentence or that Joe Hall would have otherwise received that sentence. And that includes both, that includes the argument that she could have pled open and received a variance to get her under that one year sentence. I believe, I have not checked this, but my recollection is that in the state habeas context, at least, I mean, in our view, in 4241 habeas and 4500 habeas, we don't, aren't swayed by what the same trial judge says he would have done, he or she would have done. We regard it as an objective standard and we don't take that as indicating prejudice. Do you know if that's right? I don't know about 2255s, but I know that in, with regard to state habeas, we don't. No, but I don't. One thing, a judge doesn't necessarily know what he would do in a different situation, or would have done in another situation. Sure, perhaps a better way to say it is the district court judge's findings of fact, which are entitled to deference here. He found that she would not have otherwise received a sentence of under one year. And he went through the arguments that the Joe Hall made in her petition, including the supposed disparities between her sentence and the ones received by other defendants, as well as her arguments about the collateral consequences of conviction. In terms of the, whether the government would have offered a plea agreement, it seems extremely probable. And the magistrate judge thought that they probably would have. I mean, they, yes, they took a dim view of the perjury. But at the same time, what was being asked was that she not be convicted of a felony at all, which lends credence to the notion that her lawyer thought that that's what she needed. And that's where things fell apart. There was no suggestion that they wouldn't have engaged in a plea agreement for a suggestion to the judge of a under a year sentence. They never got anywhere near that. And with regard to her co-defendant, yes, she cooperated, but she got a way more lenient sentence. And why wouldn't this person have gotten somewhere in between? Yes, her co-defendant, Hamira Chechi, did get a much more lenient sentence, but it was the combination, not only of the early acceptance of responsibility, but also her cooperation and the importance of the information she gave. Ms. Chechi proffered to the government and gave the government evidence that supported additional charges against the fraud leader, subornation of perjury charges they were able to bring against him in a superseding indictment. So it was sort of the quality of the information she gave coupled with her early acceptance that resulted in that generous offer. And there's simply no showing from Petitioner that she could have received a similar, even if not as generous offer. It's true she only needed a sentence of under one year, but it's mere speculation to find that she would have received that offer. That would have been more than that. I mean, they did say they would make an offer. So the offer, presumably, had to be for something less than she would otherwise been exposed to. So it presumably had to be for less than at least for less than 24 months and probably for less than 15 months. So there's, we're getting pretty close at that point. It's true. There was the statement by Prosecutor Dolan, which was, if your client is ready to accept responsibility, I'll send an offer over. And there's no further discussion of what that offer would have entailed. Presumably, it certainly had to be. Mr. Howell. I'm sorry. I'm just going to say it surely had to be for less than the guideline when she went to trial or there wouldn't have been any point in even saying I'll send over an offer. So there was some negotiation that they were going to do. For less than 24 months. Yes, the guidelines with acceptance would have been 15 to 21 months. There is no discussion of what the details of any offer would have been because there wasn't an offer, but it's unusual for the government to make a recommendation below the guidelines and the guidelines with acceptance would have been 15 to 21 months. So she still would have needed a variance of more than 20%. What was her criminal history category? It was criminal history category one. Okay. So she was, I think she would have been in the identical situation. Had she pleaded guilty, she'd have the same guideline range as Jackie. That's correct. The guideline range for both would have been 15 to 21 months. That's correct. Right. So yet Jackie ended up, you know, with this very favorable. What, she didn't go to prison at all or? Yes. The government's recommendation was for eight months of home detention with And that was based as is stated in the 5k motion and the Ms. Chechi sentencing hearing on her, their substantial cooperation. And we simply don't have anything in the record to show that Ms. Jo Hall would have cooperated or provided as important information. That's, there's no support for that in the record. And even aside from that, There really should be an evidentiary hearing. I mean, we don't know that there aren't some internal notes that the U.S. attorney has, for example, as to what they were contemplating, if they were contemplating anything. In addition to the credibility of her statement, that she would have done anything to do this. Why didn't she at least get an evidentiary hearing? Which is what the magistrate judge concluded. Well, I think your honor that the district court, it wasn't an abuse of discretion to find that on these facts and on this record, she simply had an established prejudice. And also because the district court found that the record shows she simply wouldn't have pleaded guilty. But going to your question about a potential remedy, should the court be persuaded that something more is required? I think you're correct. It would be an evidentiary hearing to resolve that issue. If the court were to find that it had been an abuse of discretion to deny the evidentiary hearing. I think the suggestion that vacating the conviction is the proper remedy is misguided. Under Lafleur, a sixth amendment remedy should be tailored to the harm. And here, Jo Hall on her best day is saying, if I had had perfect advice, if everything I say is true, I would have pleaded guilty. So there wouldn't be a reason to vacate the conviction when what she wants is a chance to plead guilty and sort of throw herself at the mercy of the court. Although I would go back to the court's finding that if she had come before the court with an open plea and with these guidelines, 15 to 21 months, there's no reasonable probability that the court would have varied down more than 20% below the guidelines. Let me ask about, there's reference to all the other defendants, and I know they're in a different situation because they did not commit perjury before the grand jury, but they all got pretty light deals. Were any of those under guideline sentences that the other defendants were able to negotiate? You know, I'm not familiar with the plea negotiations there, but because they were probationary sentences, I would have to assume those were below the guidelines because they pled guilty to various counts of mail fraud or wire fraud. However, those defendants, as your honor mentioned, were in a completely different situation. They were charged only with the conduct of buying the fraudulent pay stubs, and they accepted responsibility promptly and did not deny their guilt. And that's a fundamental difference with Joe Hall here. But it does show that many others got variances even without a cooperation deal, that by acceptance of responsibility, I understood their crime was less severe, but they also got straight probation, some of them, whereas this defendant is only seeking, would have only sought a 91-day variance, really. So doesn't the fact that variances were granted and seems like many of these other cases suggest there was a reasonable probability that a variance would have been granted here if Mr. Hall had accepted responsibility and pled? Your honor, I have just two responses to that. First, your honor's correct. It is a very different charge, and that's noted in the emails between the attorneys where it's clear the government viewed perjury as a serious offense. And the second one is those other defendants were part of an earlier fraud scheme. Ms. Joe Hall's perjury was worse because this second scheme necessitated testimony in order to sort of crack the case. The previous fraud scheme had been largely proved on the papers, on the bank records. In this case, as was shown in the government's sentencing memo, they relied on grand jury testimony. And when Ms. Joe Hall and her co-defendants lied to the grand jury, the government, it had much more significant consequences as the government had to disprove that false testimony. I see them over time and- Wait a minute, please. To go back to whether there would have been a plea agreement, when the U.S. attorney rejected the diversion but said, I'll make an offer if you want one, but not that one, it seems to me he had to be contemplating something under the guidelines because she could have just pleaded guilty and gotten the guidelines, right? She could have pleaded guilty without a plea agreement and gotten the 15 to 21 months guidelines. There's no indication that I've seen in the record that the government was contemplating a plea agreement under the guidelines. And it's pretty typical- Why would she need a plea agreement? It's typical that the government's offer is for a low-end sentence because of the weight of the government's recommendation at a sentencing hearing. It would have been 15 months instead of the 21 months and that would have been the plea? That's the offer. Okay, but he didn't say that's all we're doing. He just said what we're not going to do is not have her be convicted for a felony. That was all he said. That's correct. And he offered an offer and then they have negotiations. If they, if the only negotiation, that was the only, it just seems to me, given the comparison, given the record. Isn't it, I mean, isn't it at least reasonably probable that if Mr. Roque understood that one, her sole goal was not to be deported and two, to fulfill that goal, she needed a plea agreement that was below a year, then he would have sought to negotiate for that. And maybe she would have gotten it if she, you know, given what happened with her co-person. But the problem is that her lawyer didn't even know to ask for that, what to ask for of this attorney. Your Honor, I think the record reflects that her goal was to deny that she had committed it. She told her attorney that she had not made false statements to the grand jury that she had in fact picked peaches. That's what she told the grand jury. That's what she told her attorney. And she continued to state that even after being found guilty. So I don't think it's clear that her sole goal was to avoid deportation. It seems clear that she was insistent that she hadn't in fact committed the crime that she'd been charged and eventually found guilty of. Thank you. Thank you, Your Honors. Okay, United States versus Doha is submitted.
judges: Wardlaw, Berzon, Chen